E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JASON A. GORN (Cal. Bar No. 296179)
BRANDON E. MARTINEZ-JONES (Cal. Bar No. 318749)
Assistant United States Attorneys
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7962/7167
     Facsimile: (213) 894-0141
     E-mail:    jason.gorn@usdoj.gov
                brandon.martinez-jones@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:23-cr-00567-GW |
|---|---|
| Plaintiff, | TRIAL STATUS MEMORANDUM |
| v. | Date:     January 25, 2024<br>Time:     9:15 a.m. |
| SERGEY VLADIMIROVICH OCHIGAVA, | Location: Courtroom of the Hon.<br>George H. Wu |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Jason A. Gorn and
Brandon E. Martinez-Jones, hereby files the Government's Trial Status
Memorandum.

///
///
///
///
///

The government's status is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 25, 2024          Respectfully submitted,

                                 E. MARTIN ESTRADA
                                 United States Attorney


                                       _/s/_____
                                 JASON A. GORN
                                 BRANDON E. MARTINEZ-JONES
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

After one and a half days of trial and before defense cross-examination of the government's fifth witness, defendant began to complain of medical distress during the lunch break and required medical evaluation. The Court adjourned the trial until a further determination is made regarding defendant's availability at trial.

At the hearing following defendant's episode,[1] the defense and government both opposed a mistrial. The current record indicates that defendant showed no physical manifestations of distress and EMTs took defendant to the hospital because of the standard operating procedure for in-custody defendants. The government now files this brief to discuss the relevant law and recommends the Court grant a continued recess should defendant require additional medical treatment. Under Ninth Circuit case law, a longer recess is permitted when a defendant requires medical treatment or observation, particularly when, as here, significant judicial, public, government, and defense resources have already been expended in the current trial.

**II.   RELEVANT FACTS**

    **A.   Defendant's Prior Medical History**

This is not the first time defendant has presented with chest palpitations during this investigation, and he has previously noted to law enforcement that he has a heart condition that was medically evaluated and cleared. (Exhibit A.) On November 5, 2023, while in Customs and Border Protection ("CBP") custody following the underlying incident at issue in this case, the defendant claimed to

---

[1] Defendant was not present at the hearing because he was receiving medical care.

1

have an accelerated heart rate during an admissibility interview. (Id.) CBP officers took the defendant shortly after midnight for medical evaluation. Medical staff at Cedars-Sinai Hospital in Marina del Rey medically cleared defendant by 6:15 a.m. that same day after a period of observation. (Id.)

**B.   Defendant's Court Appearances**

Defendant has also missed three initially scheduled court appearances. Defendant was a medical miss-out due to a hospitalization before his scheduled arraignment on the Indictment. (ECF No. 11.) Two pretrial conferences have also been continued in this case because U.S. Marshals indicated defendant had refused to leave his cell. (ECF Nos. 20, 39.)

**C.   The Trial**

The trial in this matter began on January 23, 2024. (ECF No. 54.) Twelve jurors and two alternate jurors were impaneled and sworn.

On the first day of trial, counsel for the parties presented opening statements. (Id.) During the next day and a half, the government put on five witnesses, including CBP Officer Gustavo Tello, CBP Officer Willie Morris, Copenhagen Airport Police Officer Mikkel Guldborg Jensen, Bo Lindstroem, and Nanne Jappe. With the exception of Nanne Jappe, who remains sworn and on the stand, the defense has actively cross-examined each of the government's witnesses.

At noon on Wednesday, January 24, 2024, the government ended the direct examination of Nanne Jappe. After court was recessed for the lunch hour, the parties received notice from the Court that defendant had complained of chest pains and that a nurse would examine him. When the parties returned for trial, a supervisor U.S. Marshal

1   notified the Court that a nurse evaluated defendant and found no
2   physical manifestations of a heart issue, but the defendant would be
3   transported to a hospital for an evaluation. From this information,
4   the Court advised the jury that the trial would be in a recess until
5   January 25, 2024, and separately ordered the defendant to appear
6   absent a doctor's order. (See ECF No. 56.) As of the date of this
7   filing, the parties have not been updated on the defendant's medical
8   evaluation.

9   In the current trial, the government has completed presentation
10  of the majority of its case-in-chief. The government has four
11  witnesses remaining for its case-in-chief:
12      (1) Nanne Jappe (Defense cross-examination)
13      (2) SAS LAX Station Manager Gracelynn Cracchiolo
14      (3) CBP Officer Karla Chavez
15      (4) CBP Officer Chan Chung
16  The government has further streamlined its witness list and
17  anticipates that it needs just approximately one trial day to
18  complete its case-in-chief.

19  In the parties' joint witness list, the defense intends to call
20  17 witnesses (including defendant). (ECF. No. 33.) The parties have
21  already met and conferred in an attempt to reduce this estimated
22  number of defense witnesses.

23  **III. LEGAL STANDARD**

24  A defendant has a "valued right to have his trial completed by a
25  particular tribunal." Arizona v. Washington, 434 U.S. 497, 503
26  (1978). "As a mistrial is an extreme remedy, it should be used with
27  the greatest caution, under urgent circumstances, and for very plain

28

1  and obvious cases." <u>United States v. Reed</u>, 762 F. App'x 173, 174 (5th
2  Cir. 2019) (citation omitted).

3      As a procedural matter, "[b]efore ordering a mistrial, the court
4  must give each defendant and the government an opportunity to comment
5  on the propriety of the order, to state whether that party consents
6  or objects, and to suggest alternatives." Fed. R. Crim. P. 26.3. In
7  reviewing whether the trial court abused its discretion by declaring
8  a mistrial, courts look to four indicators: "Has the trial judge
9  (1) heard the opinions of the parties about the propriety of the
10 mistrial, (2) considered the alternatives to a mistrial and chosen
11 the alternative least harmful to a defendant's rights, (3) acted
12 deliberately instead of abruptly, and (4) properly determined that
13 the defendant would benefit from the declaration of mistrial?"
14 <u>United States v. Bates</u>, 917 F.2d 388, 395-96, 398 (9th Cir. 1990)
15 (holding that the court abused its discretion by <u>sua sponte</u> declaring
16 a mistrial without defendant's consent, and that double jeopardy
17 barred a retrial in the absence of manifest necessity).

18 **IV.  ARGUMENT**

19     Based on the totality of the circumstances and the current
20 record regarding defendant's medical condition, a mistrial would be
21 an inappropriate remedy, particularly when the Court can make
22 reasonable accommodations. Continuing with the current trial, as
23 opposed to declaring a mistrial, will also preserve the significant
24 judicial, public, government, and defense resources that already have
25 been expended. Finally, any prejudice with respect to a recess in the
26 middle of trial is to the government, not the defense.

27     Under these circumstances, completion of the trial, even after a
28 recess, is appropriate and promotes the ends of justice.

4

**A.    The Current State of the Record Regarding Defendant's Medical Status Warrants a Recess and Does Not Support a Mistrial**

Nothing in the current record supports a finding that defendant cannot resume this trial. To the contrary, the supporting record and docket show defendant's repeated presence after claimed medical concerns, including a nursing assessment that defendant showed no discernible physical manifestations of distress.

What is less certain is the actual period of time needed before defendant can return to the trial. Although defendant has quickly been medically cleared in the past, there is no current prognosis. Given the paucity of substantive medical history, a mistrial on the basis of defendant's claimed medical condition, with nothin more, is unsupported by the current record.

Should the Court have continued questions regarding defendant's medical condition and the estimated recovery time, an under-seal inquiry by the Court with a direct treating physician may be appropriate. Even if telephonically conducted, the Court through a live inquiry could efficiently obtain accurate and reliable information regarding defendant's actual medical condition. The Court may also wish to inquire with the physician as to what accommodations could be made to the trial to permit defendant to proceed safely. An inquiry conducted by the Court would allow it to ask any unresolved questions and receive direct answers from the treating physician without further delay.

**B.    The Court Can Make Accommodations, if Necessary, to Permit Defendant to Complete the Trial**

In considering a motion for a mistrial, this Court should "consider[] the alternatives to a mistrial" and "adopt one if less

1   drastic and less harmful to the defendant's rights than a mistrial."

2   Bates, 917 F.2d at 396.

3       In order to accommodate completing the current trial, the

4   government respectfully suggests the Court consider reasonable

5   accommodations for defendant, if necessary. For example, the Court

6   might consider providing an additional break in the current trial day

7   schedule, or even shortening the trial hours per day, should

8   defendant's treating physician recommend as such. Of course, it would

9   be up to defendant and his treating physician to make those specific

10  requests and bring them to the Court's attention. The point is that

11  other good-faith alternatives to a mistrial should be considered and

12  followed to permit defendant to complete the current trial with his

13  trial counsel of choice, while also preserving public resources.

14      **C.    Preservation of Resources Supports a Recess Over a Mistrial**

15      A continued recess in this case instead of a mistrial is

16  appropriate to preserve the significant judicial, public, defense,

17  and government resources that have already been expended on the

18  current trial. "To grant a mistrial is a drastic remedy that results

19  in additional expense to the judicial system as well as to all the

20  parties." United States v. Smith, 44 F.3d 1259, 1268 (4th Cir. 1995).

21      The Court expended significant time and energy in presiding over

22  pretrial litigation, as well as the current trial, in this matter.

23  After jury selection, the impaneled jurors put their lives on hold

24  and spent multiple court days coming to the courthouse and listening

25  to jury instructions, opening statements, and receiving live

26  testimony from five witnesses.

27      The government likewise has expended significant time and

28  resources preparing for this trial and putting on its case-in-chief.

1    Three witnesses have flown in from the country of Denmark to testify
2    in this case. Any retrial would necessarily require the government to
3    re-prepare and, of course, re-present its case, including again
4    flying out those witnesses on an 11-hour flight each way. All five of
5    the witnesses who have already testified in the government's case
6    (some of whom required travel to testify) would be inconvenienced and
7    burdened by having to testify yet again in a retrial.

8          A mistrial would also undoubtedly cause defendant to remain in
9    custody during the pendency of the case. This is particularly
10   prejudicial for this defendant, who is facing a likely Guidelines
11   range of 0-6 months.[2] Moreover, defense counsel would have to prepare
12   for trial yet again.

13         **D.   Any Prolonged Recess Prejudices the Government**

14         The trial court has "full discretion in determining whether the
15   jury shall be allowed to separate at any particular time during the
16   course of the trial." United States v. Diggs, 649 F.2d 731, 738 (9th
17   Cir. 1981). For a jury separation to constitute reversible error, a
18   defendant must show that he suffered actual, as opposed to
19   hypothetical, prejudice. Id. (holding that denial of a mistrial for
20   an 11-day separation was not an abuse of discretion; collecting
21   cases); United States v. Benson, 686 F.3d 498, 504 (8th Cir. 2012)
22   (no abuse of discretion resulting in clear prejudice in court's
23   denial of a mistrial based on a three-week mid-trial continuance for
24   defendant to get new counsel); Smith, 44 F.3d at 1269 (district court
25   did not abuse its discretion in declining to grant a mistrial because

26

27         [2] This estimate is based on information known to the government
     at this time and is subject to change. The government reserves the
28   right to make independent sentencing calculations should defendant be
     convicted of the charged offense.

of a 32-day hiatus in the trial; no showing of actual prejudice); <u>but see United States v. Hay</u>, 122 F.3d 1233, 1235-36 (9th Cir. 1997) (abuse of discretion for district court to order a 48-day recess, as opposed to proceeding with the trial, to accommodate juror vacations between the close of evidence and the start of closing arguments where alternate juror was available and both defendants had requested the trial proceed with less than twelve jurors if necessary; length of separation was inherently lacking in due process and did not require showing of actual prejudice where, among other things, jury had heard "nearly four months" of "complex, technical evidence against two defendants" prior to recess). The government is aware of at least one case in this district where the Court granted an extended mid-trial recess of approximately four months at defense counsel's request where defense counsel was not "physically and emotionally able to appear" following a serious car accident involving a family member. (<u>See</u> <u>United States v. Christine Daniel</u>, No. 2:09-cr-00993-RJT (trial held from Mar. 16, 2011 through Sept. 26, 2011).) When trial ultimately resumed four months later, the court granted the defendant's motion to represent herself for the remainder of trial. (<u>Id.</u>, ECF No. 182.) The Ninth Circuit affirmed the eventual convictions but did not directly address the reasonableness of the recess. <u>United States v. Daniel</u>, 676 Fed. App'x 675 (9th Cir. 2017) (unpublished).[3]

---

[3] Through public reporting, the government is also aware that the Los Angeles Superior Court trial against Robert Durst had an over 14-month recess due to the COVID-19 pandemic. <u>See, e.g.</u>, https://www.latimes.com/california/story/2021-05-17/robert-durst-trial-resume-long-covid-delay-the-jinx. Durst was subsequently convicted and sentenced to life imprisonment. https://www.latimes.com/california/story/2021-10-14/robert-durst-sentenced-to-life-in-prison-for-susan-berman-murder.

Any prejudice caused by an extended recess--the sole purpose of which would be to permit defendant to be medically cleared to resume trial--falls on the government, not defendant. As the party with the burden of proof, the government faces a tactical disadvantage in having had the presentation of its case-in-chief unexpectedly interrupted mid-stream. See Citron v. Aro Corp., 377 F.2d 750, 752 (3d Cir. 1967) (prolonged recesses placed plaintiff under a "tactical disadvantage" that would be "considerably minimized if the trial is moved along with reasonable continuity so as to permit the orderly and intelligible presentation of testimony"). When the trial resumes, the government will have only a few witnesses left to present, while defendant will have the opportunity to present his entire case-in-chief uninterrupted, which jurors will then receive fresh in their minds and soon before they enter the jury deliberation room.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that the court provide the necessary recess while defendant is medically evaluated rather than declare a mistrial over the parties' objection.