E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JASON A. GORN (Cal. Bar No. 296179)
BRANDON E. MARTINEZ-JONES (Cal. Bar No. 318749)
Assistant United States Attorneys
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7962/7167
     Facsimile: (213) 894-0141
     E-mail:    jason.gorn@usdoj.gov
                brandon.martinez-jones@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:23-cr-00567-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION RE: DEFENDANT SERGEY OCHIGAVA |
| v. | Hearing Date: February 5, 2024 |
| SERGEY VLADIMIROVICH OCHIGAVA, | Hearing Time: 8:00 a.m. |
| Defendant. | Location:  Courtroom of the Hon. George H. Wu |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jason A. Gorn and Brandon E. Martinez-Jones, hereby files the government's Sentencing Position Regarding Defendant SERGEY VLADIMIROVICH OCHIGAVA.

///

///

///

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 1, 2024                    Respectfully submitted,

                                            E. MARTIN ESTRADA
                                            United States Attorney

                                            MACK E. JENKINS
                                            Assistant United States Attorney
                                            Chief, Criminal Division


                                                */s/*
                                            JASON A. GORN
                                            BRANDON E. MARTINEZ-JONES
                                            Assistant United States Attorneys

                                            Attorneys for Plaintiff
                                            UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

On January 26, 2024, defendant Sergey Vladimirovich Ochigava ("defendant") was convicted following a three-day jury trial of one count of Stowaway on an Aircraft, in violation of 18 U.S.C. § 2199. The conviction carries a maximum five-year term of imprisonment.

At trial, the government proved that on November 3, 2023, defendant entered an access-controlled terminal at Copenhagen Airport by closely following an authorized traveler through a security turnstile and mimicking the motion of scanning a boarding pass or travel document. After determining that defendant had overstayed his Schengen visa, Copenhagen Airport Police seized defendant's Russian and Israeli passports and instructed defendant to remain in the terminal while they investigated the visa overstay.

On November 4, 2023, defendant followed a surge of passengers at Gate C33 where Scandinavian Airlines ("SAS") flight SK931 was boarding an international flight to Los Angeles. Defendant boarded the airplane and took an unassigned seat as it departed. When defendant arrived at Los Angeles International Airport, U.S. authorities at customs determined defendant was not on the SAS flight manifest and did not have lawful travel documents to enter the United States. Defendant was arrested after authorities determined he was a stowaway aboard the aircraft.

The government calculates that defendant's total offense level is four and that he is in Criminal History Category I. The resulting advisory Guidelines range is zero to six months. Because defendant repeatedly exploited security weaknesses to board an international flight without a ticket, boarding pass, or passport, and has

1  continuously shown no remorse or regret for his conduct, the
2  government respectfully recommends that the Court impose a high-end,
3  within-guidelines sentence of six months' imprisonment, followed by a
4  three-year period of supervised release; order that defendant pay
5  $2,174.90 in restitution to SAS airlines; and impose a fine and the
6  mandatory special assessment of $100.

**II.  FACTUAL BACKGROUND**

The evidence at trial established the following pertinent facts:

**A.  Copenhagen Airport: Defendant Bypassed a Security Turnstile to Enter the Airport and Was Investigated by Copenhagen Airport Police for a Visa Overstay.**

On November 3, 2023, at approximately 3:45 p.m., defendant arrived at Copenhagen airport ("CPH") via a metro terminal. Surveillance video showed defendant tailgate an unsuspecting passenger through a security turnstile to enter "Finger C," a terminal for non-Schengen departures. Copenhagen Airport Police Officer Mikkel Guldborg-Jensen investigated defendant at passport control and determined that defendant was a Schengen overstay on his Israeli passport and that he did not have any stamps or visas in his Russian passport. Defendant claimed he was walking by the airport to see if he could travel with his Russian passport and admitted that he did not have a boarding pass. After seizing defendant's passports to conduct additional inquiries, Officer Guldborg-Jensen instructed defendant to remain in the non-Schengen terminal until the visa overstay issue was resolved.

**B.  SAS Flight 931: Defendant Boarded an SAS Flight to Los Angeles Without a Visa or Boarding Pass and Without Being Listed as a Passenger on the Flight Manifest.**

In the morning of November 4, 2023, defendant joined a crowd of other travelers concentrated around gate C33 to board SAS flight

SK931 to Los Angeles. He made his way undetected through the gate and jet bridge and successfully boarded the airplane. While the aircraft was waiting to depart, the defendant wandered into the business class cabin, causing inquiring cabin crew to approach him. Without uttering a response to the cabin crew, defendant left business class and took an unassigned economy seat. When the crew finalized the flight to Los Angeles, 183 passengers were included on the flight manifest. Because he had boarded the aircraft without SAS's consent, defendant was not on that list.

Defendant was on board flight SK931 as it departed Copenhagen to Los Angeles. During the over ten-hour flight, he had multiple interactions with cabin crew as he moved between a series of unassigned seats. As the plane prepared to land in Los Angeles, SAS Flight Attendant Nanne Jappe instructed defendant to take his assigned seat before landing. Defendant instead took a number of new unassigned seats.

    **C.    U.S. Customs Inspection at LAX: Defendant Was Arrested After He Presented Himself to U.S. Border Authorities Without Appropriate Travel Documents and Without Being Listed on the Flight Manifest.**

SAS Flight Attendant Bo Lindstroem and airport video surveillance confirmed that defendant disembarked flight SK931 after it landed at Los Angeles International Airport ("LAX"). Defendant then encountered U.S. Customs and Border Protection ("CBP") officers conducting primary inspection of arriving travelers. Defendant first approached CBP Officer Gustavo Tello and falsely reported that he left his passport on the airplane.

Another CBP officer, Willie Morris, attempted to process defendant but could not find any record of defendant in CBP

databases. Officer Morris asked defendant to write down his name, date of birth, and flight information. Defendant falsely provided Officer Morris with the name "Sergey Schlomo." Officer Morris could not locate defendant using this additional information.

CBP officers later found a photo on defendant's phone depicting part of a Russian travel document in the name of "Sergey Ochigava." With this information, CBP Officer Karla Chavez searched CBP databases and confirmed that no record existed of defendant being listed as either a passenger on an incoming airline or a visa holder with permission to enter the United States. Defendant was thereafter arrested and charged as a stowaway aboard flight SK931.

### III. DEFENDANT'S CRIMINAL HISTORY CATEGORY

The government is unaware of defendant having any prior convictions or arrests. With zero criminal history points, defendant is in Criminal History Category I.

### IV. SENTENCING GUIDELINE CALCULATION

Defendant's total offense level is 4, based on the following:

| | | |
|---|---|---|
| Base Offense Level: | 4 | U.S.S.G. § 2B2.3(a) |
| Secure Area of Airport | +2 | U.S.S.G. § 2B2.3(b)(1)(iv) |
| Zero-Point Offender | -2 | U.S.S.G. § 4C1.1(a) |
| **Total Offense Level:** | **4** | |

### V. GOVERNMENT'S SENTENCING POSITION

**A. A Six-Month Term of Imprisonment is an Appropriate Sentence for Defendant Considering the § 3553(a) Factors.**

A sentence of six months' imprisonment, followed by a three-year period of supervised release; restitution; and a fine and $100 special assessment is a sentence sufficient, but not greater than

4

necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

1. Nature and Circumstances of the Offense.

The government's recommended sentence adequately reflects the serious nature of defendant's offense. Defendant tailgated behind an unknowing passenger through a security turnstile and into a secured area of the Copenhagen airport. After he received a fine from Copenhagen Airport Police and was ordered to remain in the airport while he was investigated, defendant instead fled as a stowaway aboard flight SK931 to Los Angeles. Once there, defendant proceeded to repeatedly lie to United States authorities in an effort to conceal his identity and his crime. A high-end sentence of six months' imprisonment provides just punishment given the serious nature and aggravating circumstances of the offense.

2. History and Characteristics of Defendant.

Defendant is a 46-year-old Russian and Israeli national without documentation allowing him to enter or remain in the United States. Since defendant's arrest, the government has contacted the Israeli consulate and referred the contact information of the Israeli Consul of Consular Affairs in Los Angeles to the defense to arrange assistance and return travel for the defendant. To date, the government is unaware of defendant's interest in this assistance.

Although defendant has no criminal history, the facts developed at trial illustrate defendant's lack of respect for the laws of Denmark and the United States, his desire and willingness to flee from authorities to evade investigation and prosecution, and a pattern of dishonesty toward law enforcement, both American and Danish. Moreover, defendant has failed to show any remorse or regret

5

for his actions despite causing serious national security concerns both in the United States and abroad. Defendant's demonstrated history of breaching security, evading law enforcement, and lying to law enforcement on both sides of the Atlantic demonstrate and justify a high-end sentence of six months' imprisonment.

### 3. Need for Deterrence and to Promote Respect for the Law.

A six-month sentence will also promote respect for the law and deter future misconduct by this defendant and others. By requiring defendant to serve a serious custodial sentence, the Court will impress upon not only him but also others that the offense of stowing away on an aircraft is a very serious crime, particularly when it involves deliberate breaches of both airport and airline security. Such a sentence is therefore important to deter this defendant and others from engaging in the same or similar criminal conduct in the future. A high-end sentence will also allow defendant time to reflect upon his actions and the consequences they may have. Accordingly, a six-month sentence is necessary and appropriate to promote respect for the laws governing travel by aircraft; deter future security breaches of this type, by this defendant and others; and thereby protect the public from the threat to national security posed by defendant or other persons who covertly board commercial aircraft without authorization.

**B. Fines, Restitution, and Supervised Release.**

The government recommends that the Court order defendant to pay a $100 mandatory special assessment.

The Court should order restitution to SAS equivalent to the airfare and fees that SAS lost as result of defendant stowing away on

6

its aircraft. A paying, authorized passenger would have paid SAS $2,174.90 for a one-way flight to LAX on flight SK931 on November 4, 2023.(Ex. A.) The government therefore requests that the Court order defendant to pay $2,174.90 in restitution to SAS.

The government does not have access to defendant's financial disclosure form, nor a presentence report that would detail defendant's current income and financial obligations. However, a fine is generally appropriate in this case both to reflect the serious nature of the offense, to serve as just punishment for the offense, even if payment is to be made over time. U.S.S.G. § 5E1.2(d). Accordingly, the government requests that the Court order defendant to pay a fine in accordance with his ability to pay, or otherwise find that defendant has no ability to pay a fine and thus waive all fines pursuant to U.S.S.G. § 5E1.2(a).

The government also recommends a three-year period of supervised release following defendant's six-month term of imprisonment. Defendant exploited airport and airline security to stow away on an international flight into the United States. The evidence at trial demonstrates that defendant used deception and dishonesty both to board this flight and to try and conceal his crime from United States authorities after he arrived in Los Angeles. A significant period of supervised release following imprisonment, with a term prohibiting defendant from re-entering the United States without authorization from immigration authorities, is necessary to ensure that defendant continues to comply with the law upon his release, that he does not attempt again to unlawfully enter the United States, and that he is subject to this Court's supervision if he does successfully re-enter,

lawfully or otherwise. The government therefore recommends a three-year period of supervised release.

**VI.   CONCLUSION**

For the reasons set forth above, the government respectfully requests that defendant be sentenced as follows: (1) a six-month term of imprisonment; (2) a three-year period of supervised release; (3) restitution in the amount of $2,174.90; (4) a fine; and (5) a special assessment of $100. Applying the factors described in 18 U.S.C. § 3553(a), this sentence is sufficient but not greater than necessary to reflect the seriousness of defendant's crime, deter future misconduct by defendant and others, promote respect for the law, and provide just punishment for the offense.