

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,

                    Plaintiff,

        vs.                          Case No. CR-23-567

SERGEY VLADIMIROVICH OCHIGAVA,

                    Defendants.
_____/


                    REPORTER'S TRANSCRIPT OF
                    PRETRIAL CONFERENCE HEARING
                    Thursday, January 18, 2024
                         8:00 a.m.
                    LOS ANGELES, CALIFORNIA


                TERRI A. HOURIGAN, CSR NO. 3838, CCRR
                  FEDERAL OFFICIAL COURT REPORTER
                  350 WEST FIRST STREET, ROOM 4311
                  LOS ANGELES, CALIFORNIA  90012
                        (213) 894-2849


UNITED STATES DISTRICT COURT

1          **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4         UNITED STATES ATTORNEY'S OFFICE
          United States Attorney
5         BY:  JASON ALEXANDER GORN
               BRANDON E. MARTINEZ-JONES
6              Assistant United States Attorneys
          United States Courthouse
7         312 North Spring Street
          Los Angeles, California  90012
8

9

10   **FOR THE DEFENDANT:**

11        FEDERAL PUBLIC DEFENDER'S OFFICE
          BY:  ERICA CHOI
12             NADINE C. HETTLE
               Deputy Federal Public Defenders
          Central District of California
13        321 East Second Street
          Los Angeles, California 90012
14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1          **LOS ANGELES, CALIFORNIA; THURSDAY, JANUARY 18, 2024**

2                          **8:00 a.m.**

3                          --oOo--

4

5          THE COURT:  Let me call the matter of *United States*

6   *versus Ochigava.*

7          All right.  Let me have appearances starting with

8   government counsel first.

9          MR. GORN:  Good morning, Your Honor.  Jason Gorn for

10  the United States.

11         MR. MARTINEZ-JONES:  And joined by Brandon

12  Martinez-Jones for the United States.

13         THE COURT:  For the defense?

14         MS. CHOI:  Good morning, Your Honor.  Erica Choi and

15  Nadine Hettle on behalf of Mr. Ochigava, who is present, and

16  assisted by the Russian language interpreter.

17         THE COURT:  All right.  We are here for a pretrial

18  conference that is currently set for a jury trial on the 23rd

19  of this month.

20         The TMAX date, however, is February the 20th.

21         Let me ask, my clerk informs me that the parties expect

22  to go to trial on the 23rd of January; is that correct?

23         MR. GORN:  Yes, Your Honor.  The United States has

24  coordinated its witnesses for that day.

25         It has filed its trial brief just in advance, letting

```
 1    the Court know some of the issues that we do have to resolve
 2    before that date.
 3              THE COURT:  When did you file that?
 4              MR. GORN:  That would be, I believe, on Tuesday
 5    night or Wednesday morning, Your Honor.
 6              THE COURT:  Today is Thursday.
 7              MR. GORN:  Yes, Your Honor.
 8              THE COURT:  In other words, within the last
 9    48 hours?
10              MR. GORN:  Yes, Your Honor.
11              THE COURT:  The parties have not, however, filed any
12    of the Court's pretrial requirements, including proposed jury
13    instructions, proposed witness list, proposed exhibit list,
14    et cetera, et cetera, et cetera, et cetera, statements of the
15    case.
16              MR. GORN:  Your Honor.
17              THE COURT:  What do the parties expect me to drop
18    everything and --
19              MR. GORN:  Absolutely not.  I did review the Court's
20    order regarding discovery.  We did meet and confer.
21         We did file the joint statements of the parties one week
22    before the previous pretrial conference.
23         We are butting up against the trial date in this case
24    because he had a pretrial conference set for last week.
25         The defendant, I believe, was a refusal, so we had to
```

1    continue it to this date.

2          We have been conferring with the defense regarding

3    discovery.

4          The United States, in its trial brief, did state that

5    the jury instructions and exhibit lists will be filed after

6    today's hearing.

7          We just had some initial discovery issues that we

8    already highlighted to the Court in the joint statement that

9    we're hoping to resolve today before filing those.

10          THE COURT:  Let me hear from the defense.

11          MS. CHOI:  Thank you, Your Honor.  The defense is

12    also ready to go.

13          This is, in our view, I think the government would

14    agree, this is not a particularly complicated case.

15          I think we could get the joint instructions, the motions

16    in limine, that are highlighted in the joint statement that was

17    previously filed to the Court, probably Monday.

18          I do want to clarify, Mr. Ochigava was not a refusal

19    last week.

20          The elevators at the jail were broken, and he had to

21    walk down eight flights of steps, shackled, not his ankles, but

22    his belly and arms were shackled, and he tripped and fell.

23          It wasn't a refusal on his part.  He did want to be here

24    and we learned that Friday when we visited with him.

25          But we would echo what government represented, as far as

1  our readiness for trial and our willingness is to go on the

2  23rd.

3           THE COURT:  Let me ask Javier --

4           THE COURTROOM DEPUTY:  Yes.

5           THE COURT:  -- have we gotten -- I know it might not

6  be a problem getting a jury, but are we going to have an

7  interpreter for that period?

8           THE COURTROOM DEPUTY:  We definitely have a Russian

9  interpreter.  The government's office has been in contact with

10  our interpreter's office regarding the interpreters.

11           THE COURT:  We need a Russian interpreter and a

12  Danish interpreter.  We have those interpreters for next week

13  trial?

14           MR. GORN:  We're lining up a Danish interpreter for

15  the United States witness.

16      I do want to just preface to the Court yesterday

17  evening, I did receive an e-mail from the defense, asking if we

18  would accept subpoenas for the government's witnesses as well.

19      One of those witnesses is secured only by an MLAT for a

20  Danish police officer coming from Copenhagen, Denmark.

21      We don't have subpoena power for that individual, so the

22  United States is inviting that individual to come on the basis

23  of the MLAT and will provide a Danish interpreter.

24      However, if the defendant wishes to have his own Danish

25  interpreter, that is something they will have to work out

1   through the court system.

2       So I don't know what the defense intends to do on that

3   side.

4       But the United States is working right now to secure

5   that Danish interpreter for trial starting on Tuesday, but I

6   believe that that one --

7         THE COURT:  If I start the trial, I'm not going to

8   continue it if you can't get an interpreter.

9       In other words, you want to start without giving the

10  Court sufficient advanced notice.

11      I will start the trial on Tuesday, but if anything goes

12  wrong, I'm going to stop the trial; is that understood?

13        MR. GORN:  Yes.

14        THE COURT:  It's going to be over.  Is that

15  understood?

16        MR. GORN:  Understood.

17        THE COURT:  As long as it's understood.

18      But let me ask the defense, are you going to want a

19  Danish interpreter for any reason?

20       MS. CHOI:  I don't believe so.  Our client speaks

21  Russian.  We don't need a Danish interpreter unless the

22  government is saying we need to bring our own interpreter to

23  conduct cross-examination.

24       THE COURT:  If they have the interpreter for the

25  record.

1          MS. CHOI:  So we don't need one separately?

2          THE COURT:  Yes.  Once you get an interpreter, that

3     interpreter is going to stay.

4          Is that only for that one witness?

5          MR. GORN:  Yes.

6          THE COURT:  Let me ask, did you give the Court a

7     statement to the case to be read to the jury, or am I supposed

8     to read the indictment?

9          MR. GORN:  Read the indictment, Your Honor.

10         THE COURT:  Is that satisfactory to the defense?

11         MS. CHOI:  That's fine, Your Honor.

12         THE COURT:  Okay.  You know, you can write one prior

13    to trial, I'm not forcing you, I am just asking a question,

14    usually beforehand, the parties let me know one way or the

15    other.

16         Let me put it this way, I will have you guys back here

17    on Monday for further pretrial and you can let me know about

18    the details.

19         I expect you will give me the witness list, the exhibit

20    list, the proposed jury instructions, and proposed verdict

21    form, and if you guys want a proposed statement of the case to

22    be read to the jury, you will provide that to me no later than

23    midnight tonight?

24         MS. CHOI:  Could the Court read that again?

25         THE COURT:  I will give you until 11:55.

1          By 11:55, you will give me a joint witness list, a joint

2    exhibit list, joint proposed jury instructions, a proposed

3    statement of the case.

4          And I will have you guys come back here at 8 o'clock on

5    Monday for a final pretrial.

6          MR. MARTINEZ-JONES:  I want to clarify, the witness

7    list and exhibit list should be joint?

8          THE COURT:  Obviously, it has to be joint.

9          Did you read my pretrial stuff?

10         Normally, the defense is somewhat reluctant to give --

11   identify all of their witnesses, and so, I understand that, but

12   I want it as a joint document.  I don't want separate

13   documents.

14         MR. MARTINEZ-JONES:  Understood, Your Honor.

15         THE COURT:  Same thing with exhibits.

16         Also, as to exhibits, you know my requirements that it's

17   a joint exhibit list and all objections to any exhibits have to

18   be on the document, and if those objections are not included in

19   the document, they are waived.

20         MS. HETTLE:  I'm sorry, I can't hear, Your Honor.

21         THE COURT:  I said my normal requirements for the

22   exhibit list, and you have been in trial in front of me before,

23   so you know what they are.

24         In other words, all the exhibits, except for rebuttal

25   exhibits, have to be included in the exhibit list, and any

1    objections -- it's a joint exhibit list -- and any objections

2    have to be included in the exhibit list, and if the objections

3    are not included, they are waived.

4         Also, insofar as a rebuttal exhibit, I don't think I

5    have ever seen one, as a judicial officer, although, I suppose

6    it would be, like, a four-leaf clover, and maybe they exist

7    somewhere, but I have never seen one.

8         Anything else we need to discuss?

9         MR. MARTINEZ-JONES:  Your Honor, there is the

10   subject of the defense's motion to compel two categories of

11   discovery.

12        Late last night the government submitted a filing that

13   sets forth what the defense served on us in terms of their

14   motions and then the government's responses.

15        THE COURT:  Normally, motions are set for hearings,

16   aren't they?  Are we dealing in an alternative universe?

17        MR. MARTINEZ-JONES:  Your Honor --

18        MS. HETTLE:  Your Honor, the Court asked us to brief

19   it, and submit it by Tuesday.

20        THE COURT:  Was it submitted by Tuesday?  I don't

21   think so, was it?

22        MS. HETTLE:  Your Honor, we gave our copy to the

23   government on Tuesday and they indicated that Your Honor had

24   stated that our position was only supposed to be only one

25   paragraph, which I didn't hear, and so, they were complaining

1    that we had written too much and so they did not file the

2    document because they took the time to respond.

3              THE COURT:  Let me ask you, is this item on Docket

4    Number 23, is that it or what is the docket?

5              MR. MARTINEZ-JONES:  Docket 23, I do want to

6    clarify.

7              THE COURT:  It's a lot more than one page.

8              MR. MARTINEZ-JONES:  Yes, Your Honor.  The

9    government's recollection is that at the first attempt at

10   pretrial conference last week, Your Honor directed the parties

11   to file a short response, and my recollection is Your Honor

12   specified one paragraph statement from each party on each of

13   the discovery issues.

14         What we have received -- I reached out to the defense on

15   Friday to ask for their position so we could respond.

16         We received the defense's position, which was really a

17   fully briefed motion to compel on Tuesday morning at around

18   8:30 a.m. when the Court specified that the document was to be

19   filed that same day by noon.

20         So it's not a complaint, just it really wasn't

21   reasonable or feasible for the government to respond to a fully

22   briefed motion to compel and then get it on file, jointly in

23   approximately three and that half hours.

24         So the government took the time, since Tuesday, to

25   prepare a response to the defense's motion, then at Docket

1    23 last night filed what we received from the defense along

2    with what the government's responses, so that is the current

3    posture of the defense's motions.

4         THE COURT:  Let me just make sure I understand, is

5    Docket Number 23 the joint document or is it just the

6    government's response?

7         MR. MARTINEZ-JONES:  No.  It includes the defense's

8    written positions that the government received Tuesday morning.

9         I did not want to put defense counsel's signature on it

10   for purposes of filing, which is why only the government's

11   signature is on the document.

12        Obviously, we are happy to refile if we receive

13   authorization to put defense counsel's signature on it.

14        We did flag these issues in our Rule 16 statement as

15   well as -- obviously, defense counsel indicated an attempt to

16   meet and confer.

17        THE COURT:  Let me ask this last question, I will

18   not be able to rule on this in its current condition, so I

19   presume that if I rule on it on Monday, whatever I rule is what

20   I'm going to rule, and if I were to grant the defense's motion

21   you have the items?

22        MR. MARTINEZ-JONES:  Yes.  If the concerns are the

23   redactions of documents, we can produce those documents.

24        THE COURT:  That's all it is.  In that case, I will

25   make the ruling on Monday.  Anything else?

1        MS. HETTLE:  Your Honor, perhaps it will -- one of

2   the issues that is raised in that -- or the joint dispute

3   concerned an e-mail chain about, I believe, contained some

4   internal information about security measures at the Copenhagen

5   Airport.

6        The government here is arguing our client bypassed

7   whatever measures were in place to get on that plane.

8        I think that is relevant, but the government has

9   generously offered in their filing to let the Court see this in

10  camera, which I think would be really speed up the process, if

11  the Court were able to just look at that before Monday and see

12  if there is anything that the defense should be concerned about

13  regarding what is in the e-mails.

14        MR. MARTINEZ-JONES:  Your Honor, may I be heard.

15  The government is happy to submit the e-mail chain to which

16  defense counsel refers in camera at any point that Your Honor

17  would like.

18        I would just note that the problem, and I think we're

19  all sort of dancing around it, is that there are lingering

20  discovery disputes and the basis for those discovery disputes

21  are that the defense contends it needs to see the unredacted

22  versions of these documents in order to permit the defense to

23  conduct its own investigation before proceeding to trial.

24        THE COURT:  It's kind of late.

25        MS. HETTLE:  Your Honor, I don't think that is a

1   fair characterization.

2         These witnesses -- there will be witnesses getting on

3   talking about security procedures in place, which is kind of a

4   quasi expert type of testimony.

5         But we -- in many ways in that part of the brief, I'm

6   speculating what might be in those e-mails based on surrounding

7   content of what was provided that was unredacted.

8         Maybe not exists, so, the government providing this in

9   camera, we have a neutral pair of eyes on this, we have two

10  young prosecutors who are determining --

11              THE COURT:  Not anymore.

12              MS. HETTLE:  -- the contents of what is relevant to

13  the defense, and if the Court sees nothing --

14              THE COURT:  The only problem I have, I don't

15  necessarily mind doing it, I may not have the sophistication

16  insofar as what actually might be germane to your defense.

17        I don't mind doing it, if it's something you think is so

18  obvious that would leap out to somebody who is not intimately

19  familiar with your case.

20        I don't mind doing it, it's just that I don't want it to

21  be something that may not prove too fruitful.

22        Although, what I would allow you to do, since they're

23  going to submit to me that in camera, I will require them to

24  submit it to me today, I will allow you to submit also in

25  camera, if there is something in particular that you are

1  interested in or you want me to be aware of.

2       But I'm not necessarily saying don't give me your

3  defense necessarily, but if there is something that I should be

4  looking for when I look at the stuff, you know, give me, like,

5  a one-page outline of what things you think I should be looking

6  for.

7       I will not look at the materials with that in mind.

8       MR. MARTINEZ-JONES:  Your Honor, just one other note

9  on the subject of the other motion to compel, which the defense

10  is asking the government to provide the unredacted version of

11  the flight manifest for the flight in question, so the full

12  last names of 183 passengers, the whole basis for the motion is

13  that the defense needs everybody's full name so they can

14  investigate and interview those people for information they may

15  have.

16       THE COURT:  How can they, at this stage in the game?

17       MR. MARTINEZ-JONES:  I think the bigger point,

18  either the defense is making these motions and they are

19  formally noticed so they can prepare for trial starting

20  Tuesday, or they want to go on Tuesday, and the basis for the

21  motion at least on that point, falls away, because there is no

22  way they will be interviewing 183 people of all nationalities

23  between now -- maybe never, certainly not between now and the

24  trial.

25       THE COURT:  I don't understand.  Let me ask the

```
1    defense, what is your response to that argument?
2              MS. CHOI:  Your Honor, we're not attempting to
3    interview 183 people in several days.
4         There are -- there is a subset of the passengers we're
5    interesting in.  I'm happy to provide the Court an in camera
6    filing.  I can keep it short, I have it ready to go, I was
7    planning to file it concurrently with this joint briefing
8    explaining why we need the unredacted flight manifest, and what
9    we intend to do with that information.
10        It goes to our theory of defense, but I do want to
11   provide that to the Court in camera.
12        So there are individuals we want to interview, but it's
13   not everybody.
14             THE COURT:  Why do you need all 180?
15             MS. CHOI:  I'm sorry?
16             THE COURT:  Why do you need all 183, I presume the
17   defendant was in one particular location.  I understand people
18   around him, but I don't understand why you need all 180.
19             MS. CHOI:  He was not sitting in one seat for the
20   entire duration of the flight.
21        He was moving -- he sat in a few different seats, and
22   there is a small subset, it's not everybody that we need.
23        If the Court only wanted the government to unredact some
24   of the names, we can let the Court know, which ones we would
25   like.
```

1          THE COURT:  All right.  But you are going to file

2   something?

3          MS. CHOI:  I will file something.

4          THE COURT:  You are not filing it under seal, you

5   are filing it to file.  You are filing publicly, right, or is

6   this under seal file?

7          MS. CHOI:  It would be in camera, it goes to our

8   defendant's theory.

9          THE COURT:  All right.  File it, and I will consider

10  it, I will make a ruling on Monday.

11      I presume you are not going to get it today, all right.

12  What else?

13          MS. CHOI:  Your Honor, the government at about

14  1:00 a.m. this morning, produced several hundreds of pages of

15  discovery that they have indicated might be -- they might seek

16  to introduce at trial.

17      If we could have a little more time, perhaps, 8:00 a.m.

18  tomorrow, if we could file 8:00 a.m.?

19          THE COURT:  I will give you until 9:00 a.m.

20  tomorrow.

21          MR. GORN:  The government's response with the

22  discovery is actually in response to the informal discovery

23  request that we received from the defense the Friday before our

24  pretrial conference.

25      A lot of that was voluminous because what the defense

UNITED STATES DISTRICT COURT

1  was asking for was forensic accounting essentially of the cell

2  phone download which took some time for agents to go through.

3  They were also asking for essentially internal investigation

4  documents from the FBI as to how they conduct cell phone

5  downloads.  It took time to essentially find and make

6  controlled documents uncontrolled for the purposes of showing

7  to the defense counsel.

8            I do not even have continuous possession of those

9  documents.  I had to offer defense counsel to come into our

10  office to review those documents.  It took time to put those

11  together.  This was not a last-minute disclosure.

12            THE COURT:  Why are you telling me this?

13            MR. GORN:  In response to the defense's argument

14  about the documents that we provided late.

15            THE COURT:  She is saying -- I thought she was

16  telling me the fact that they received several hundred pages of

17  additional material.

18            That's all I think she said.  I didn't think she was

19  blaming you necessarily.

20            MR. GORN:  No.  The reference to this would be in

21  our case in chief, we were going to use as to trial.

22            This discovery was in response to the informal discovery

23  request that we received from the defense, and that was the

24  point I was making.

25            THE COURT:  Well, again, I understand your

```
 1    contention, I don't know if it was necessary to make it.  I
 2    don't know -- let me ask the defense, what do you have to say
 3    in response?
 4              MS. CHOI:  I'm asking for a little bit more time
 5    than 11:55 a.m.
 6          If we could have past midnight?
 7              THE COURT:  I gave you until 9 o'clock on Friday
 8    morning.
 9              MS. CHOI:  Thank you, Your Honor.
10              THE COURT:  That's why I didn't understand the
11    government's response.
12          What else?  Anything?
13              MR. MARTINEZ-JONES:  Your Honor, I guess the one
14    question is my understanding is that, and this has been flagged
15    in a couple of filings by now, and I think the defense counsel
16    referenced it, the subject in motions in limine.
17              THE COURT:  There are no motions in limine, are
18    there?  I didn't see any.
19          Normally, we decide motions in limine at a pretrial.
20    This is a pretrial.
21              MS. HETTLE:  There isn't, Your Honor.
22          We have asked the government to produce the statements
23    of our clients that they intend to introduce at trial, so we
24    can make sure those statements are not taken out of context.
25              We have not received that from them, but other than
```

1  that, that would be our only concern.  There may not be issues.

2          THE COURT:  I guess that would be the only potential

3  motion in limine.  Do you have the defendant's statements?

4          MR. MARTINEZ-JONES:  Your Honor, we have produced

5  all of the information concerning statements by the defendant

6  of which the government is aware.

7          So they have the whole universe of statements that the

8  government may seek to introduce at trial.

9          I have certainly never been in a situation where we need

10  to give up our work product on what parts of those statements

11  or statements we might seek to introduce at trial.

12          They know the full panoply of statements by the

13  defendant.

14          MS. HETTLE:  Your Honor, it is two hours worth of

15  interviews with our client.

16          As the Court well knows, and it's defense's obligation

17  to make sure that the statements of the government intends to

18  introduce at trial are not taken out of context from --

19          THE COURT:  Well, let me stop you.  If he's already

20  given the defense and only two hours worth of statements, that

21  is not that much.

22          I have had cases of hundreds of hours of recorded

23  statements, something like that, I could understand, if it's

24  only two hours, you sit and listen to two hours of witness

25  statements.

1          MS. HETTLE:  Your Honor, we have to right to make

2     sure that is all of it.

3          THE COURT:  In other words, the government is

4     claiming they have already turned over to you the two hours

5     worth of statements that they have from your client, unless you

6     are claiming they have more or something like that.

7          MS. HETTLE:  I'm not claiming that, Your Honor.  I'm

8     asking them to identify the portions of the two hour audio that

9     they intend to introduce at trial.

10          THE COURT:  Again, if it were hundreds of hours, I

11     might be inclined to agree with you.  If it's only two hours

12     worth, you know, I think you could pretty much know just by

13     listening to that what the two hours of what they will probably

14     use, and again, I'm not going to require them to specify at

15     this point since they have already provided you two hours.

16     It's not that much.

17          Anything else?

18          MS. CHOI:  There are a couple of motions in limine

19     that were identified.

20          They are very limited, perhaps, we can talk with the

21     government about what they are?

22          THE COURT:  By tomorrow at 9 o'clock, you will give

23     me, if there is any motions in limine, give me that, but I want

24     them in a joint document form.

25          MS. CHOI:  Yes, Your Honor.

1          MR. MARTINEZ-JONES:  So the government's response to

2     the motions?

3          THE COURT:  Yes, in the same document.  I don't want

4     a reply, I just want the moving and the response.

5          MS. CHOI:  Understood.  Thank you, Your Honor.

6          THE COURT:  Also, I presume there would be no more

7     than, at the most, three motions in limine, since I haven't

8     gotten any yet?

9          MR. MARTINEZ-JONES:  At this point, Your Honor, the

10    government doesn't intend to file any.

11         THE COURT:  I guess the defendant will have no more

12    than three motions in limine.

13         MS. CHOI:  No more than five, it may be three, but

14    no more than five.  We will talk about the government.

15         THE COURT:  I can name that tune now, is that what

16    we're doing?

17         MS. CHOI:  Your Honor, it's just we don't know if

18    the government is not affirmatively told us if they are

19    planning to introduce do certain things.  We can work it out

20    with them.  If they are planning to, then we will file two more

21    additional motions in limine.

22         MR. MARTINEZ-JONES:  Your Honor, one the government

23    -- just like in any other case, we reserve the right to

24    introduce things that we have produced to the defense.  That's

25    what Your Honor knows.

1          THE COURT:  That is normally what happens.

2          MR. MARTINEZ-JONES:  No. 2, it is not feasible for

3     the parties to submit joint filings on three or five motions.

4          THE COURT:  It's feasible if you expect the Court to

5     rule to on it, a couple of days, I mean, before the trial, you

6     are going to have to do it.

7          MR. MARTINEZ-JONES:  To be clear.

8          THE COURT:  No offense, I was an AUSA.  I'm giving

9     you guys an incredible break at this point in time, period.

10         When I was practicing, judges wouldn't do what I'm doing

11    now.  They would say, too bad.

12         So, you know, if you want to go to trial, that's fine,

13    we're going to go to trial on Tuesday.

14         But I have other work I need to get done as well,

15    including other stuff from both of your offices that are

16    requiring me to file something today.

17         Also, about stuff, about scheduling stuff like that,

18    both sides, no offense to both your offices, both of your

19    offices, I would never have dreamed to do stuff that you guys

20    are doing now when I was an AUSA.

21         MR. MARTINEZ-JONES:  I understand, Your Honor.  I

22    would say on the subject of the mils, the motions in limine.

23         THE COURT:  I know what a mil is.

24         MR. MARTINEZ-JONES:  Just this is a formal

25    environment.

1          THE COURT:  You want to make sure everybody knows?

2          MR. MARTINEZ-JONES:  A formal environment, they are

3    not our motions.  For the defense to be filing them close to

4    file three to five, then the government -- certainly, if we

5    filed five motions in limine today for a trial on Tuesday --

6          THE COURT:  The five motions in limine they want to

7    file, no later than 2 o'clock today.  Since it's going to be a

8    joint filing, they give you theirs and you just respond.  I

9    think you can do that by nine o'clock tomorrow morning.

10         I am putting a page limitation as to each motion in

11   limine.  Each motion in limine will not be more than three

12   pages, and the response will not be more than three pages.  It

13   makes it a lot easier.

14         MR. MARTINEZ-JONES:  We appreciate it.

15         THE COURT:  You are welcome.  Anything else?

16         MS. CHOI:  No, Your Honor.

17         THE COURT:  Okay.  I will see you here on Monday at

18   8 o'clock.

19         MS. HETTLE:  Thank you, Your Honor.

20         THE COURT:  Remember, it's always better to resolve

21   these matters, if one can.

22         MS. HETTLE:  Thank you for reminding us.

23         THE COURT:  Yes.

24         MR. MARTINEZ-JONES:  Thank you, Your Honor.

25         (The proceedings concluded at 8:49 a.m.)

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES   )
                        )
STATE OF CALIFORNIA     )

I, TERRI A. HOURIGAN, Federal Official Realtime Court Reporter, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the judicial conference of the United States.

Date: 11th day of March, 2024.


                    /s/ TERRI A. HOURIGAN
          _____
            TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
                    Federal Court Reporter

**UNITED STATES DISTRICT COURT**